Nos. 23-55673, 23-55674, 23-55680, and 23-55682

IN THE

# United States Court of Appeals

## FOR THE NINTH CIRCUIT

*In the matter of*

JOSEFINA LOPEZ,

*Debtor.*

JOSEFINA LOPEZ and
VICTORIA FIRE AND CASUALTY COMPANY,

*Appellants*,

v.

ERIC BEJAR and CHRISTINA BEJAR, and
HOWARD M. EHRENBERG, in his capacity as Chapter 7 Trustee,

*Appellees*.

On bankruptcy appeal from the United States District Court
for the Central District of California
Honorable John F. Walter, District Judge
Case Nos.: 2:23-cv-0455−JFW and 2:23-cv-01365−JFW

## APPELLANTS' REPLY BRIEF

*Of counsel:*

Carl N. Kunz, III
Douglas N. Candeub
**MORRIS JAMES LLP**
500 Delaware Ave.,
Ste. 1500
Wilmington, DE 19801
Tel.: (302) 888-6800

Victor A. Vilaplana (SBN 58535)
**PRACTUS, LLC**
P.O. Box 9058
La Jolla, CA 92038
Tel.: (619) 840-4130

and

Benjamin M. Carson (SBN 283611)
**Law Offices of Benjamin M. Carson, P.C**.
5965 Village Way, Ste. E105
San Diego, CA 92130
Tel: (858) 255-4529

*Attorneys for Appellant Victoria Fire and Casualty Company*

Michael H. Colmenares (SBN: 123024)
**COLMENARES & TOMILOWITZ**
6080 W Center Drive, 6th floor
Los Angeles, CA 90045
Tel.: (213) 444-1900
Email: mhcandrmt@gmail.com

*Attorney for Appellant Josefina Lopez*

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ........................................................................1

II. THE BEJARS' INTRODUCTORY STATEMENT MISSTATES
THE ISSUES IN THIS APPEAL ..................................................................6

III. MUCH OF THE BEJARS' COUNTER-STATEMENT OF THE CASE
IS IRRELEVANT, MISLEADING, OR BOTH .................................................7

    A. Pre-Bankruptcy Filing Events ..............................................................7

    B. Events in the Bankruptcy Case Through Discharge ............................8

    C. The State Court Appeals ....................................................................11

    D. Back in Bankruptcy Court..................................................................14

IV. THE BEJARS PRESENT NO VALID SUPPORT FOR THEIR
PRETENSE THAT THE TRUSTEE HAD A RIGHT TO APPEAL ...............14

  A. The Trustee Had No Right to Appeal the Judgment for the Bejars; their
Response Cannot Explain Away the Requirements of Cal. CCP § 902 .....15

  B. The Estate Has No Property Interest in Lopez's Defense in the Bejar
Action; the Bejars' Arguments Do Not Challenge this Fact.......................17

  C. Bankruptcy Code §558's Principle of Non-Exclusivity as to Defenses
Applies, and the Bejars Cannot Rebut It By Simple Denial ......................20

  D. None in the *Mozer* Line of Cases Involved a Personal Injury Action that
Resumed After a Grant of Stay Relief, to Enable Pursuit of an Insurer;
But on that Material Distinction, the Bejars Change the Subject................21

V. THE BEJARS' CIRCULAR ARGUMENTS ABOUT "DEFENSIVE
APPELLATE RIGHTS" AS "PROPERTY OF THE ESTATE" FAIL TO
ADDRESS THE MANY REASONS WHY IT IS A FALLACY ...................23

  A. The Bejars' Notion that "Property of the Estate" *Literally* Includes
"Anything of Value" Is Mistaken................................................................24

  B. The Response Ignores the Many Reasons Why "Property" as Defined
in California Law Does Not Include Statutory Procedural Rights.............26

  C. The Bejars' Reliance on the Small Set of Non-Precedential Opinions
That Applied *Mozer's* Faulty Ruling, in Inapposite Cases, Is Misplaced
...............................................................................................................30

D.  This Case Does Not Present a Constitutional Issue, Because as a Statutory Matter, the Right to Appeal Is Not "Property" ............................33

E.  The Bejars' Contention that the Bankruptcy Court Gave Due Regard to the Insurance Contract Is Meritless ............................................................36

VI. THE BEJARS MISSTATE AND MISAPPLY THE STANDARDS FOR TREATING A PROPERTY INTEREST AS HAVING ARISEN PREPETITION ............................................................................................36

VII.  APPELLEES DO NOT DISPUTE THAT THE DISTRICT COURT'S FACT "FINDINGS" WERE IMPROPER AND SHOULD BE VACATED ..............................................................................................39

VIII.  CONCLUSION ..........................................................................40

IX. CERTIFICATE OF COMPLIANCE....................................................a

SUPPLEMENTARY ADDENDUM ........................................................b

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bensinger v. Davidson*,
147 F. Supp. 240 (S.D. Cal. 1956)......................................................27

*Bogan v. Wiley*,
90 Cal. App. 2d 288 (1949) ...............................................................27

*In re Bolton*,
584 B.R. 44 (Bankr. D. Idaho 2018)...................................................37

*Bouzaglou v. Haworth (In re Bouzaglou)*,
2018 WL 4062299 (B.A.P. 9th Cir. Aug. 13, 2018), *aff'd*, 803 F.
App'x. 147 (9th Cir. May 1, 2020) (unpublished)...............................31

*In re Bracewell*,
454 F.3d 1234 (11th Cir. 2006) ..........................................................39

*In re Burgess*,
438 F.3d 493 (5th Cir. 2006) ..............................................................39

*Buss v. Superior Ct.*,
16 Cal. 4th 35 (1997) ...........................................................................5

*Butner v. United States*,
440 U.S. 48 (1979)........................................................................26, 30

*Butwinick v. Hepner*,
128 Nev. 718 (2012) ...........................................................31, 32, 33

*Cobb v. University of So. Cal.*,
32 Cal. App. 4th 798 (Ct. App. 1995)..................................................28

*County of Alameda v. Carleson*,
5 Cal.3d 730 (Cal. 1971)......................................................................15

*In re Crowe*,
2021 WL 415864 (Bankr. D. Ariz. Feb. 4, 2021)................................35

*Cusano v. Klein*,
264 F.3d 936 (9th Cir. 2001) ...............................................................37

*In re Delannoy*,
2018 WL 4190874 (B.A.P. 9th Cir. Aug. 31, 2018)..........................31, 33

*Fields v. Michael*,
91 Cal. App. 2d 443 (1949) .................................................................27

*In re Fitness Holdings Int'l, Inc.*,
714 F.3d 1141 (9th Cir. 2013) ..............................................................30

*Fridman v. Anderson (In re Fridman)*,
2016 WL 3961303 (B.A.P. 9th Cir. July 15, 2016)...............................31

*Gladstone v. U.S. Bancorp*,
811 F.3d 1133 (9th Cir. 2016) ..............................................................24

*In re Glaser*,
816 F. App'x 103 (9th Cir. 2020) .....................................................37, 39

*Haworth v. Ness Adams, Inc.*,
2017 WL 432811 ..................................................................................31

*Ironshore Indem., Inc. v. Banyon 1030-32, LLC*,
2014 WL 11531916 (S.D. Fla. May 14, 2014).....................................16

*Lindsey v. Normet*,
405 U.S. 56 (1972)................................................................................34

*In re Lloyd*,
603 B.R. 247 (Bankr. D. Mass. 2019) ..................................................39

*M.L.B. v. S.L.J.*,
519 U.S. 102 (1996)..............................................................................34

*McCarthy v. Goldman (In re McCarthy)*,
2008 WL 8448338 (B.A.P. 9th Cir. Feb. 19, 2008) ..........................31, 33

*McKee v. National Union Fire Ins. Co.*,
15 Cal. App. 4th 282 (1993) ...................................................................2

*In re Morales*,
403 B.R. 629 (Bankr.N.D. Iowa 2009)............................................20, 32

iv

*In re Mozer*,
302 B.R. 892 (C.D. Cal. 2003) ...................................................................*passim*

*In re Neidorf*,
534 B.R. 369 (B.A.P. 9th Cir. 2015) ....................................................37

*People v. Kozlowski*,
96 Cal. App. 4th 853 (2002) ........................................................27

*People v. Punzalan*,
112 Cal. App. 4th 1307 (Ct. App. 2003)...........................................16

*In re Ryerson*,
739 F.2d 1423 (9th Cir. 1984) .........................................................38

*Segal v. Rochelle*,
382 U.S. 375 (1966)...........................................................................38

*Tory v. Cochran*,
544 U.S. 734 (2005)....................................................................35, 36

*Turner v. Cook*,
362 F. 3d 1219 (9th Cir. 2004) ......................................................19

*U.S. v. Whiting Pools, Inc.*,
462 U.S. 198 (1983)..........................................................................24

*In re WVSV Holdings, LLC*,
2023 WL 5548975 (9th Cir. Aug. 29, 2023) ......................................36

## Constitution

Equal Protection Clause ...............................................................34, 35

## Statutes

11 U.S.C. § 301(b) ...............................................................................24

11 U.S.C. § 323 ....................................................................................16

11 U.S.C. § 362(a) ..........................................................................18, 19

11 U.S.C. § 523 ....................................................................................11

11 U.S.C. § 541(a) ...................................................................24, 25

11 U.S.C. § 541(a)(1)....................................................................23

11 U.S.C. § 554..............................................................................10

11 U.S.C. § 558..................................................................20, 21, 32

Cal. Civ. Code § 14(3) ..................................................................27

Cal.Civ. Code § 655 ...............................................................*passim*

Cal. Civ. Code § 656 .....................................................................27

Cal. Civ. Code § 658 .....................................................................27

Cal. Code Civ. Proc. § 902 ....................................................*passim*

Cal Elec. Code § 10000 ...........................................................25, 29

Cal. Ins. Code § 11580(b)(2) ..........................................................2

**Court Rules**

Cal. R. Ct. 8.104(d)(2) ..................................................................38

**Other Authorities**

3 COLLIER ON BANKRUPTCY ¶ 323.03 (16th 2023) ......................16

10 COLLIER ON BANKRUPTCY ¶ 6009.03 (16th 2023) ..................16

H.R. Rep. 95-595, 166, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6127...................25

H.R. Rep. 95–595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787 .........................25

## I.    PRELIMINARY STATEMENT

The core concern of Appellants Lopez and Victoria in this appeal is the right and ability of Ms. Lopez, for herself and her liability insurer, Victoria, to pursue their timely-filed *state court* appeal[1] from a $60 million (damages-plus-interest) jury verdict and judgment, entered in a negligence action arising from a motor vehicle accident.  Appellants contend the judgment is insupportable and unjust, largely due to trial judge errors in having allowed plaintiffs' counsel to introduce irrelevant and highly prejudicial evidence[2] at trial.  Pursuant to California law, since Lopez is the lone defendant and the sole "party aggrieved" by the judgment, she *alone* had the right to appeal.  Cal. Code Civ. Proc. § 902. There is no valid ground for barring Appellants from pursuing the appeal.

To briefly recap: the reason this matter is in *federal* court is because the California Court of Appeal ("CCoA") invoked federal bankruptcy law to block Lopez (and Victoria) from pursuing the appeal.  As Appellants' Opening Brief (the "AOB") explained, roughly two months after the appeal was commenced, the CCoA informed the parties to the appeal that it had been apprised of Lopez's bankruptcy, and had decided, *sua sponte*, to oust Lopez from the appeal and install the Chapter

---

[1] Except where context otherwise requires, references herein to the "appeal" are intended to refer to the appeals both from the judgment and the later order on costs.

[2] *See* Appellants' Opening Brief ("AOB") at 13, n. 2 (citing Lopez's Motion for New Trial filed after the trial).  Whether the merits of Appellants' positions would ultimately be sustained is not at issue here.

7 Trustee in her place. The CCoA premised its actions on its interpretation of bankruptcy law. That court's rationale was fundamentally flawed, however, due to its failure to distinguish between claims and defenses; it so misconstrued bankruptcy law that no party, nor any other court throughout these proceedings, has endorsed it.

The CCoA's startling pronouncement evinced no recognition of the fact that, once the bankruptcy court entered its Stay Relief Order and the state court trial went forward, the estate's Trustee was *not* "standing in the shoes" of Lopez. He played no part in the trial, while Lopez, with Victoria's assistance, stood in her *own* shoes – exactly as the Bejars and the Trustee proposed in their Stipulation on stay relief. *See* 5-ER-1146-1147; 5-ER-1125. The CCoA also failed to recognize that Lopez was a *nominal* defendant. She had already been granted a bankruptcy discharge,[3] and the terms of the Stay Relief Order and the related Stipulation made clear that plaintiffs would be seeking a *recovery* only from *Victoria* – and for those purposes, under California law, they had to first secure a final judgment against Lopez.[4]

Through their Appeal Rights Motion,[5] Lopez and Victoria expected the

---

[3] See 5-ER-115-1116.

[4] *See* Cal. Ins. Code § 11580(b)(2); *McKee v. National Union Fire Ins. Co.*, 15 Cal. App. 4th 282, 283 (1993) (held, a judgment creditor may not sue a judgment debtor's insurance company under Insurance Code § 11580(b)(2) before an appeal from the judgment in the underlying action is resolved through any appeals, or the time within which to pursue an appeal has passed).

[5] *See* AOB, p. 19 (identifying the Appeal Rights Motion).

bankruptcy court to correct the CCoA's mistake. But the Bejars and their ally, Chapter 7 Trustee Howard Ehrenberg, perceiving the huge, unexpected advantage the CCoA's action could provide them, opportunistically developed an alternative, unsound argument to justify that court's action. They relied largely upon *In re Mozer*, 302 B.R. 892 (C.D. Cal. 2003) – discussed at length in Appellants' Opening Brief – bolstering it with self-serving declarations of disputed facts. After oral argument and without setting an evidentiary hearing, on December 20, 2022, the bankruptcy court issued a Memorandum of Decision that accepted the Appellees' contentions and assumed the credibility of, in particular, Mr. Ehrenberg's declaration. It ruled that the "Appeals," and Lopez's "defensive appeal rights" are "property of the estate." 1-ER-26 (the Appeals); 1-ER-27 (defensive appellate rights). That led to the instant appeal.

In the Bejar's Responding Brief (the "Response" or "BRB"), the Bejars take the same approach they took in the lower courts. They disparage Victoria regarding matters not at issue in this appeal. Their "background" discussion includes assertions that are misleading, unsupported in the record, and/or simply false. They misstate applicable law; engage in misdirection by rebutting arguments that Appellants have not made; ignore parts of Appellants' arguments to which they have no3nswerr; and barrel past any illogic or inconsistency in their positions. They deny that the core issues presented by the Appellants are issues at all and quote the

bankruptcy court's 12-20-22 Decision as though it inherently repudiates Appellants' arguments why that Decision was erroneous.

But neither of the bankruptcy court's decisions repudiates the issues on appeal here. The bankruptcy court's "analysis" began with its conclusion virtually determined. Indeed, rather than construing *Mozer* in the context of its facts, it deemed all so-called "defensive appellate rights" to be "property of the estate" under California law, for the reason that a debtor's litigation opponent might be willing to pay off the estate to shut down the appeal in order to preserve the opponent's success at the trial level. 1-ER-26-27. Victoria and Lopez urged the bankruptcy court to consider the reasons why *Mozer* was poorly decided and presented multiple material factual distinctions between *Mozer* and the instant case. The bankruptcy court waved them aside, choosing to address only one of them, and ignoring the rest. *See* 4-ER-833-836; 1-ER-27. Furthermore, its unjustified certainty that "defensive appeal rights" are "property of the estate" precluded the court from considering the broader ramifications of its ruling.

The National Consumer Bankruptcy Rights Center and the National Association of Consumer Bankruptcy Attorneys are aware of some of those broader ramifications, as their proposed Amici Brief shows. The Bejars gave short shrift to the amici arguments [BRB, pp. 14-19], but the proposed amici appropriately urge the Court *not to hold* that "appeal rights are always property of the estate." Amici

4

Br., p. 6. In support, they identify several hypothetical examples where such a ruling would be "extremely problematic." *Id*., p. 5.

Indeed, affirming that the procedural right to appeal under California law is "property of the estate" would be no less troubling and harmful, and likely more far-reaching, than the examples that the proposed amici identified. The lower courts' rulings – both of which are reported in Westlaw – would affect the entire industry of liability insurers operating in California and perhaps beyond. The *Mozer* holding has heretofore *never* been applied to a case where a tort plaintiff was granted stay relief to continue their action nominally against a chapter 7 debtor, so they might recover against the debtor's insurer. It has *never* before been applied where the 'real party in interest' seeking the appeal is a nondebtor insurer, over whose property interests the chapter 7 trustee has absolutely no authority.

Where stay relief is granted to seek a judgment against an insured chapter 7 debtor, the debtor's liability insurer is *compelled* to defend the insured in a trial. *Buss v. Superior Ct*., 16 Cal. 4th 35, 49 (1997). Under the lower court's rulings, however, regardless of how errantly the trial was conducted, an appeal by an insured debtor (as nominal defendant) and its insurer can be prohibited as long as the plaintiff-creditor and the trustee have agreed to cooperate in thwarting any appellate review of the judgment. Affirming those rulings stand as precedent would mean this Court was endorsing trustee-creditor collusion to block an insurer and its insured from

5

exercising their procedural right to appellate review that the State of California affords all aggrieved parties in civil cases. That result would not only be unjust and inequitable; it would perpetuate a gross misreading of the applicable law, and should be reversed.

## II. THE BEJARS' INTRODUCTORY STATEMENT MISSTATES THE ISSUES IN THIS APPEAL

The Bejars'[6] Introductory Statement reflects two key elements of their approach to the issues on appeal: changing the subject and attacking Victoria. The Bejars falsely assert that "[t]his case arose out of" the March 2021 Release Agreement, in which Lopez settled and released to Victoria her insurance bad faith claim [*see* AOB, p. 10], which agreement the Bejars characterize as "nefarious." BRB, pp. 4-5. They make the anachronous assertion that the Release Agreement was an "attempt to avoid paying the Bejars' multi-million-dollar personal injury judgment" [BRB, p. 5] – regardless that no judgment existed until eight months *after* the Release Agreement was entered. In any event, the Release Agreement is not at issue here. It had nothing to do with the CCoA's decision to strip Lopez of her status as appellant in the state court. Nor was it a ground for the bankruptcy court's 12-20-22 Decision approving of the CCoA's action.

Next, the Bejars accuse Appellants of "attempt[ing] to hinder and delay"

---

[6] Throughout this Reply, references to the *Bejars'* assertions include the Trustee as well, in view of his joinder.

them. BRB, p. 5. In no sense is that at issue here. First, due to the Stay Relief Order, their state court trial was able to go forward as scheduled. Second, their contention that Lopez's bankruptcy filing was a bad faith act to hinder and delay them was *rejected* by the bankruptcy court. *See* 5-ER-1136. In truth, the Bejars and the Trustee bear responsibility for any "delay." BRB, p. 5. They strategically decided to latch onto the CCoA's error removing Lopez from her appeal, instead making every effort to block Appellants from obtaining appellate review of the judgment on its merits. If their response to the CCoA's April 27 Letter had been to point out that court's error and acknowledge that Lopez's appeal is proper, it would likely have been resolved by now.

## III. MUCH OF THE BEJARS' COUNTER-STATEMENT OF THE CASE IS IRRELEVANT, MISLEADING, OR BOTH

The Bejars' Response takes no issue with the facts set forth in the Statement of the Case in Appellants' Opening Brief. Unfortunately, Appellants cannot respond in like manner to the Bejars' Statement of the Case.

### A. Pre-Bankruptcy Filing Events

The Bejars describe the alleged injuries Mr. Bejar sustained in the accident [BRB, p. 6], but they were *not* at issue before the bankruptcy court, and the bankruptcy court did not render findings about them. *See* 1-ER-23. Inappropriately, the district court did. Since they are not pertinent to the issues presented, this Court should disregard the description of injuries.

7

The Bejars' description of the pre-complaint settlement negotiations between the Bejars' counsel and Victoria is unsupported, misleading, and includes assertions that will be disputed, if and when an insurance bad faith claim is asserted against Victoria. The bankruptcy court did not make any findings that would prejudicially prejudge those factual disputes, and neither should this Court.

The Bejars assert that, before they filed their complaint against Lopez, "their counsel[ ] attempted to settle their claim … in exchange for her liability policy limits," and that "Victoria unreasonably refused to settle," thereby "expos[ing] itself to 'bad faith' liability." BRB, p. 6. Their assertion is meant to *imply* that Victoria refused to offer the policy limits in payment to the Bejars, to settle their claim. That inference, however, is false. Victoria *did* offer the Bejars the policy limits *before* the Bejars filed their state court complaint. 5-ER-1161 (Hallock Decl., ¶ 8).

Although the Release Agreement [4-ER-766-772] is not pertinent to the issues here on appeal, the Bejars focus on it, and present a distorted and unfounded narrative about it. BRB, p.7. Their speculation about how the *negotiation* of the Release Agreement transpired, all without supporting evidence, should be disregarded. *Id*.

## B.  Events in the Bankruptcy Case Through Discharge

The Bejars describe parts of the Trustee-Bejar Stipulation, where the Trustee "acknowledged the existence of [a] possible bad faith claim" and threw in his support

for the Bejars' Stay Relief Motion. BRB, p. 8. To be clear, the existence of a "possible" bad faith claim is relevant only because it explains why the Bejars went to trial. If their only potential recovery were limited to the $15,000 of insurance which had been offered years earlier, there would be no economic justification for seeking stay relief.

The Bejars state that, in the Stipulation, the Trustee "acknowledge[d]" the potential bad faith claim to be "property of the estate." BRB, p. 8. That assertion is not "fact" but a legal conclusion that assumes, *inter alia*, that the Release Agreement can be avoided – a matter that is now the subject of the Trustee's adversary proceeding against Victoria.

The assertion about the potential bad faith claim being "estate" property should be understood in this context: the Bejars are the only creditor in the *Lopez* case, and if the Trustee were ultimately to pursue a "bad faith" claim and thereby bring funds into the estate, there would be no distributive function to be served. *See* AOB, p. 12, n.1.

The Bejars gratuitously note the absence of the term "abandon" in the Stipulation they entered into with the Trustee. BRB, p. 8. They then leap to the misleading legal conclusion, interjected as though factual, that 11 U.S.C. § 554 "is the only legal means by which the Trustee could have abandoned" Lopez's "defensive appellate rights." BRB, p. 8. Their assertion rests on false premises: that

9

the *Trustee owned and owns* the right to appeal that Lopez exercised in the Bejar Action, which they expand into her "defensive appellate rights," which they assert is "property of the estate" such that § 554, the Bankruptcy Code's provision on abandonment of estate property, would be implicated.

The intended inference – that the terms of the Stipulation impose limitations on Appellants – is baseless and legally unsound. The Stipulation between the Bejars and the Trustee, and the order approving their *inter se* agreement, did not, and cannot, control the rights available to the Debtor and her insurer when a state court action has been authorized to proceed against her under "applicable nonbankruptcy law."

Notably, however, the Stipulation affirmatively states the Bejars' and Trustee's agreement that the Bejars should "have relief from stay for the purposes of prosecuting the State Court Action, *including any appeals*." 5-ER-1146. That wording is plainly not limited to appeals by the Bejars.

The Bejars feign dismay about the discharge Lopez received on November 22, 2021. BRB, p. 9. They omit though, that, per the bankruptcy court's ruling on stay relief, the Bejars retained a right to file a nondischargeability complaint under Bankruptcy Code §§ 523 or 727 [5-ER-1139-1140], and they chose not to file one. *See* 1-ER-24 ("[n]o timely complaint seeking to except [the Bejars' claim] from the Debtor's discharge" was filed).

C. The State Court Appeals

In their Statement of the Case, they identify the notices of appeal that Lopez, "with the assistance of Victoria," filed from the state court judgment and from the state court order on fees and costs. BRB, pp. 9-10. They say the filing was done "unilaterally" and "in her own name," as though both were improper (which is not the case). Later in the Response, though, the Bejars falsely assert that "Victoria … filed the State Court Appeals." BRB, p. 35.

The Bejars' assertion that Lopez filed each appeal "only for her personal benefit" [BRB 9 & 10] is baseless, and unsupported by the two places to which they cite: a November 2022 Howard Ehrenberg declaration, and one of the two September 20, 2022 CCoA orders. Neither document says anything about either Lopez's personal benefit in connection with the appeals or her subjective intent in filing them. If the Bejars' point is that Lopez's appeal from the $60 million judgment in their favor was not for the *benefit of the Bejars*, whose interests the Trustee shares,[7] that proposition is self-evident. But Lopez is *not* solely acting for her personal benefit; she is also acting for the benefit of Victoria, the insurer to whom she is contractually bound by her insurance contract, and pursuant to which Victoria

---

[7] *See* 5-ER-990, ¶ 21 (stating the Trustee's belief "that the interests of the Bejars … and the Trustee are aligned").

has provided her legal defense in the litigation.[8]  Lopez must remain as the named

defendant due to the way the insurance laws operate.  *See* p. 3, n. 4, *supra*.

The Bejars thoroughly mischaracterize the CCoA Clerk's Letter of April 27,

2022 (the "April 27 Letter") [4-ER-853-854.], describing it merely as "questioning

… whether Victoria and Lopez had standing for the appeal."  BRB, p. 10.  Not only

does the April 27 Letter *not* "question" Victoria's standing; it does not mention

Victoria at all –by name or as Lopez's insurer.  4-ER-853-854.  Further, it does not

pose a *question* to the *parties* [*i.e.*, Lopez and the Bejars].  It *informs* the parties that

the CCoA has *already taken* action, by "updating" their system "to reflect that the

Chapter 7 trustee, Howard M. Ehrenberg, stands in appellant's stead. … All future

filings shall be served on Mr. Ehrenberg."  4-ER-854.  The April 27 Letter treated

Lopez's posture in the Bejar Action as though Lopez had asserted affirmative claims

and not just defenses –thus evidencing a failure to distinguish between them.  *See*

AOB, pp. 15-16.  It reflected another misunderstanding by the CCoA, in asking the

Trustee whether "the debtor remains the debtor-in-possession" – although there is

no such thing as a debtor-in-possession in a Chapter 7 case.  4-ER-854.  Finally, the

CCoA's questions reflected an unawareness that the Trustee was aligned with the

Bejars in the case and could be expected to view an aborting of Lopez's appeal the

_____

[8] Lopez, in turn, has cooperated in the defense against the Bejars' lawsuit, as is
required to avoid potential loss of coverage.

same as the Bejars would.[9]  *See*  4-ER-854.

Later in the Response, the Bejars distort the April 27 Letter even more, with a fictional narrative that the CCoA was merely "stating their 'concern'" about Appellants' standing.  BRB, p. 36.

In attempting to defend the CCoA's wrongful removal of Lopez from her appeals, the Bejars jump to a November 2, 2022 declaration by Mr. Ehrenberg, in which he presumptuously declared that he "was aware of his right to file an appeal" [BRB, p. 10] – although he did *not* have a right to appeal from the judgment against Lopez, pursuant to the applicable law under which the Bejar Action was proceeding. *See* Cal.CCP §902.  They also cite his stated belief that an appeal "would not be in the Estate's best interests."  BRB, p. 10.   But since the Bejars are the only creditor in the case, that is just a way of saying that an appeal would not be in the *Bejars'* interests.

They omit how the Appellees' position evolved.  The Trustee only first responded to the CCoA in writing on June 27, 2022.  AOB, pp. 16-17.  His letter to the CCoA of that date did not mention the *Mozer* case, or Cal.Civ. Code §655, or "defensive appellate rights."  4-ER-875-876.  Nor did Parris Law Firm attorney Daniel Eli's June 15, 2022 letter to the CCoA.  4-ER-866-873.  The Trustee first

---

[9] The terms of the Trustee's retention of the Parris Law Firm called for collaborative strategizing on the matter of the Bejars' claims.  5-ER-1056.

introduced that argument in a September 30, 2022 letter brief.  *See* 4-ER-848.

### D. Back in Bankruptcy Court

The Bejars' characterization of the Appeal Rights Motion as "a motion to abandon the Debtor's appellate rights" is, at best, misleading.  *See* BRB, p. 11. Regardless how the original or amended motion was titled, Appellants' principal argument was always that Lopez's right to appeal was not "property of the estate." *See* 5-ER-904-924 (original motion); 4-ER-822-841 (amended motion).

The Appellants request to compel abandonment by the Trustee was expressly a second-option *alternative*.  It took into account, *inter alia,* that the Trustee's conduct prior to the April 27 Letter plainly demonstrated both acquiescence in Lopez's appeal, and the absence of any action such as one might expect a trustee to take where he believed someone was improperly exercising authority over estate property.[10]

## IV. THE BEJARS PRESENT NO VALID SUPPORT FOR THEIR PRETENSE THAT THE TRUSTEE HAD A RIGHT TO APPEAL

Ever since the CCoA sent the parties the April 27 Letter, where that court mistakenly thought Lopez was asserting causes of action rather than merely

---

[10] *See* 4-ER-763 (Ehrenberg 11-2-22 Decl. at ¶ 14, acknowledging that, in May 2022, he "informed  Mr. Bonino [, Lopez's counsel,] that I did not object to the Appeals proceeding"; and 4-ER-762 (Ehrenberg 11-2-22 Decl. at  ¶ 11, acknowledging that he received Lopez's notice of appeal "[o]n or about March 14, 2022," and indicating no action taken by him as a result).

defending against them, and mistakenly concluded that the Trustee should be the proper party-appellant, the Bejars have been pressing arguments to sustain the CCoA's action, so as to avoid any appellate review of the trial court's judgment. But the Bejars' arguments are meritless. The Trustee did not have the right to appeal. The Trustee does not have a property interest in Lopez's defense.

## A. The Trustee Had No Right to Appeal the Judgment for the Bejars; their Response Cannot Explain Away the Requirements of Cal. CCP § 902

Appellants' Opening Brief discussed Cal. Code Civ. Proc. §902, the statutory provision pursuant to which the right to appeal in a civil litigation is acquired. AOB, p.38. That statute and related case law establish that, to have the right to appeal, one must be (a) a party of record, and (b) aggrieved by the outcome. *See* AOB, p. 38; *County of Alameda v. Carleson*, 5 Cal.3d 730, 736 (Cal. 1971) (right to appeal is limited to "only parties of record" who are "aggrieved" by the judgment). Here, the Trustee *could not have appealed* the judgment, *both* because he never became a party of record – he neither moved for substitution as purported representative of the debtor[11] nor to intervene – *and* because he was not aggrieved by the outcome.

A trustee has "the capacity" to sue or be sued, pursuant to 11 U.S.C. §323; but

---

[11] Where, in this action *against* the debtor (where no counterclaims were asserted), it is unlikely a motion by the Trustee to be substituted for the debtor would have been granted. *See, e.g., Ironshore Indem., Inc. v. Banyon 1030-32, LLC*, 2014 WL 11531916, at *2 (S.D. Fla. May 14, 2014), *report and rec'n adopted*, 2014 WL 11531366 (S.D. Fla. Sept. 12, 2014).

where the debtor is already a party to litigation when their bankruptcy petition is filed, even where "the cause of action belongs to the estate" – in contrast to cases like the Bejar Action – it still "does not mean … that permission to intervene or be substituted should not be obtained from the forum in which the litigation is pending." 10 COLLIER ON BANKRUPTCY ¶ 6009.03 (16th 2023). "[T]he trustee should secure the consent of the court where the suit is pending in order to appear as plaintiff or defendant in place of the debtor." *Id*.; *see* 3 COLLIER ON BANKRUPTCY ¶ 323.03 (16th 2023) (if a trustee has decided to intervene in a pending action, "the trustee must secure the consent of the court where the suit is pending" to appear in it).

The Bejars do not explain how the Trustee could rightfully claim to have had the right to appeal, without complying with § 902. Instead, they just say that §902 "is a *procedural* code" [BRB, p.19 (their emphasis)], as though compliance were not required. Yet, they acknowledge the right to appeal is statutory, not constitutional. BRB, p. 21. Yet, that statute sets specific criteria that must be met before a person will have the right to appeal. *See People v. Punzalan*, 112 Cal. App. 4th 1307, 1310 (Ct. App. 2003) ("The right to appeal is not a free–floating privilege").

The Bankruptcy Code does not entitle trustees to disregard state law requirements before  exercising state law rights.  Had he attempted to file a notice of appeal himself, and the rules of the statute were being followed, his attempt would have been rejected.

**B. The Estate Has No Property Interest in Lopez's Defense in the Bejar Action; the Bejars' Arguments Do Not Challenge this Fact**

The Bejars' response regarding the Stay Relief Order and its implementation treats the Stay Relief Order as inconsequential in relation to Lopez's appeal from the judgment and whether the right to appeal lay with her or with the Trustee. BRB, pp. 28-39.

Their rationale for that position, however, is oblique. In the Bejars' view, regardless what the Stay Relief Order said, or how stay relief orders are routinely implemented; or the fact that the Bejar Action resumed as it had been prepetition, in state court and pursuant to California law, with no participation or involvement of the Trustee, the Trustee nevertheless maintained an undisclosed but implied reversionary interest in the control of Lopez's defense, which became activated retroactively when the CCoA sent its April 27 Letter announcing its *sua sponte* removal of Lopez from her appeal and installation of the Trustee in her place. To put it mildly, their arguments lack merit.

First, the Bejars mischaracterize §362(a), the Bankruptcy Code's "automatic stay" provision, asserting incorrectly that it just bars "collection activities." BRB, p. 28; *but see* 11 U.S.C. §362(a). Section 362(a) imposes a stay barring continuation of actions against the debtor, personally, and of actions to obtain or exercise control over property of the estate. *See, e.g.,* 11 U.S.C. §362(a)(1), (2) & (3). Actions

17

against the debtor and actions against property of the estate are both covered, but are also distinct.

When the bankruptcy court granted stay relief, the Trustee very plainly did **not** "stand in the shoes" of Lopez – an assertion the Bejars make without supporting legal authority. BRB, pp. 30-31. Indeed, the Stipulation made this clear. When the action resumed, the Trustee did <u>not</u> move to be substituted in the state court trial as party-defendant. He was neither a "necessary party," nor considered one. He did not move to intervene as an interested party. Instead, the Bejars proceeded with their action and Lopez defended it *in her own name*.

The Bejars fail to acknowledge that their action is against Lopez, personally, and *not* against property of the Estate. It is an action to establish her liability, in a final judgment. The Estate (through its trustee) did not participate at all. The bankruptcy court's grant of stay relief ensured that both Lopez personally and the estate would be protected; it prohibited the Bejars from seeking any recovery from Lopez or the estate. 5-ER-1139.

Thus, the Stay Relief Order was *not* inconsequential. Rather, it established that the continuation of the action would be against Lopez only *nominally,* for purposes of establishing liability. (Lopez, personally, had to remain the party-defendant because California, like most states, is not a "direct action" state. *See* p.

3, n. 4, *supra*.)  The stay relief order ensured that the estate had no property interest at stake by the resumption of the Bejar Action.

In this light, the Bejars cannot now contend for the first time that, "after the Bankruptcy Case was commenced," the Trustee was the "only necessary and proper party" – though *only* for an appeal and *not* at the trial level [ BRB, p. 31]; and that he "became an indispensable party to the State Court of Appeals" [BRB, p. 33]. Their assertion is as mind-boggling as it is unsupported by any legal authority.  They cite one case (after the "indispensable" remark), but it offers no support.  *Turner v. Cook*, 362 F. 3d 1219 (9th Cir. 2004) does not mention the word "indispensable" and it concerned an appeal of a debtor's *affirmative* cause of action, *not* a defense. Finally, Appellants are gratified to see the Bejars acknowledge: "Nothing contained within 11 U.S.C. § 362 barred Ms. Lopez from *defending* the civil suit."  BRB, p.28 (emphasis in original). In so stating, they implicitly admit that it is not true that all "rights created or granted by statute" in California qualify as "property" [as they elsewhere argue].  Thus, for example, when Lopez's counsel exercised control over her statutory right under Cal.CCP. § 607 by presenting her case at trial – even though the Stay Relief Order did not expressly name Lopez as a beneficiary of that Order – the Bejars and the Trustee (by his joinder) concur that no violation of §362(a)(3) was implicated.

**C. Bankruptcy Code §558's Principle of Non-Exclusivity as to Defenses Applies, and the Bejars Cannot Rebut It By Simple Denial**

Why it is a fallacy that the Trustee had both (a) the right to appeal from the judgment in favor of the Bejars and (b) the authority to exclude Lopez from appealing, lies in 11 U.S.C. § 558. The Trustee can use the debtor's defenses, but not exclusively, and not at the expense of the debtor. AOB, pp. 48-51, 54-55, 66. Relatedly, a defendant's filing of a notice of appeal to preserve and continue their defense of the claims against them at the appellate level is "*inextricably bound*" to their defensive status. *Morales,* 403 B.R. at 632-633 (emphasis added). In fact, the phrase "defensive appellate rights" implicitly acknowledges this to be the case.

The bankruptcy court, however, failed to take § 558 into account in its 12-20-22 Decision (or on reargument). The court wrote that the Trustee "succeeded to" all the Debtor's "rights" in the State Court Action, without acknowledging the separate treatment of debtor defenses. 1-ER-27.

The Bejars quote §558 and argue that its non-exclusivity as to debtor defenses does not extend to "defensive appellate rights." *See* BRB, pp. 26-27. But they fail to note that §558 only enables the estate to "have the benefit of," *i.e., to use*, the debtor's defenses "*as against* any entity other than the estate." 11 U.S.C. §558 (emphasis added). Legislative history reflects that the text of §558 originally appeared in the Bankruptcy Code of 1978 as §541(e), but in the 1984 Amendments,

20

it was moved to its own section – a move that avoided any confusion about whether a debtor's defenses are "property of the estate."

Ultimately, the Bejars' response as to §558 is: "absolutely nothing in §558 has any bearing whatsoever on whether Lopez had the right to . . . exert her defensive appellate rights after she filed for bankruptcy." BRB, p. 27. They cite two cases, neither of which involved any conflict between the trustee and the debtor, and consequently are irrelevant. They do not address the citations in the Opening Brief including COLLIER ON BANKRUPTCY and *nine* cases from multiple jurisdictions.

Plainly, defenses are *not* property of the estate. If they were, then every debtor would have to list such defenses, and the right to assert such defenses on appeal, on the Schedules of personal property that they file. As a matter of bankruptcy practice, this does not happen, and this Court should not reach a novel holding that renders all such Schedules of assets retroactively false or inaccurate.

### D. None in the *Mozer* Line of Cases Involved a Personal Injury Action that Resumed After a Grant of Stay Relief, to Enable Pursuit of an Insurer; But on that Material Distinction, the Bejars Change the Subject

The fallback for the Bejars is their assertion that "defensive appellate rights" are "property" in California, because that is what *Mozer* and a number of cases that followed it said. BRB, p. 24. The Bejars' defense of the rationale in those cases is addressed in Part IV of this Reply, *infra*.

21

None in the *Mozer* line of cases involved an appeal taken in a state court action after the bankruptcy court had *terminated* the automatic stay, under terms that ensured that no property of the estate or of the individual debtor would be implicated, and where the action went forward to let plaintiffs seek a final judgment on liability, so they could try to recover from a nondebtor insurer. These differences render the *Mozer* cases inapplicable here.

Like the bankruptcy court, the Bejars ignore this issue. See BRB, pp. 23-24. Their failure to address these factual differences speaks volumes.

The Opening Brief cited several in a well-established line of cases, in which courts allowed litigation to go forward nominally against the debtor in a nonbankruptcy forum, so the plaintiffs could establish liability and seek to collect from insurance, with no involvement of the bankruptcy court or a trustee, and no property of the estate was implicated. *See* AOB, pp. 44-46. The Bejars declare these cases to be inapplicable because they are focused on the *creditor* rather than the debtor. BRB, p. 36-37. They thus miss the point that the trustee had no ongoing involvement in them.

Finally, the Bejars use the CCoA's error as basis for a distinction. To distinguish the other insurance-related cases from this one, they say the issue here is "standing." BRB, p. 47. As Appellants observed in the Opening Brief, "standing" as used by the CCoA should be understood as a matter of substantive law and not a

jurisdictional issue.  *See* AOB, p. 18, n.5.  As to the Trustee's "standing," the Bejars declare, counter-factually and without foundation, that he is the "true party in interest." BRB, pp. 36, 37.  That fiction is certainly not a basis for upholding the lower courts' rulings.

## V.  THE BEJARS' CIRCULAR ARGUMENTS ABOUT "DEFENSIVE APPELLATE RIGHTS" AS "PROPERTY OF THE ESTATE" FAIL TO ADDRESS THE MANY REASONS WHY IT IS A FALLACY

The Bejars' Response attempts to bolster the false notion, adopted by the courts below, that in California, "property of the estate" as defined in 11 U.S.C. §541(a)(1) includes the right to appeal, as held by a defendant whose litigation posture is entirely defensive (meaning,, asserting no affirmative claims against another for recovery) – *i.e.,* what they refer to as "defensive appellate rights."  BRB, pp. 19-24.  They set up and knock down some artificial targets, while failing to counter the reasons, set forth in Appellants' Opening Brief, why their notion of "defensive appellate rights" as "property of the estate" in California is a fallacy.

Ultimately, the Bejars' two principal arguments in support of the lower courts' rulings and the CCoA's removal of Lopez from her appeals are: (1) "appellate rights are solely granted by statute," and therefore "they are clearly 'property' under California law and thus became estate property" when Lopez filed for bankruptcy

relief[12] [BRB, p. 21]; and (2) the line of federal cases in California and one state case that have applied the ruling in *In re Mozer,* which treated "defensive appellate rights" as "property of the estate," should be applied here as well. Neither argument has merit.

### A. The Bejars' Notion that "Property of the Estate" *Literally* Includes "Anything of Value" Is Mistaken

As to their argument that the right to appeal is a form of "property" in California, the Bejars assert: "[e]ssentially, anything of value is property of the bankruptcy estate." BRB, p. 20. Depending, perhaps, on one's notion of what things are of value, that is essentially a false statement.[13]

Subject to the exceptions provided in subsections (b) and (c)(2), the estate of a debtor in bankruptcy is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a).

The Supreme Court observed, and it is often repeated, that §541(a) reflects that "Congress intended a broad range of property to be included in the estate." *U.S. v. Whiting Pools, Inc.,* 462 U.S. 198, 204 (1983). But the Supreme Court did not say it encompasses "anything of value." The Bejars' source for that phrase is *Gladstone v. U.S. Bancorp*, 811 F.3d 1133, 1139 (9th Cir. 2016), a case in which the

---

[12] The Bejars' Response refers to the "Order for Relief." Pursuant to 11 U.S.C. § 301(b), a debtor's bankruptcy petition operates as an order for relief

[13] *Cf.* https://www.mastercard.com/news/perspectives/2022/priceless-mccann-mastercard/ (re MasterCard's advertising campaign about things "priceless").

question was whether the debtor's interests in certain term life insurance policies constituted property of the estate. In its analysis, the court referred to "legislative history indicat[ing] that §541(a) would 'bring anything of value that the debtors have into the estate.' H.R. Rep. 95–595 (1977), at 176, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6136."

Such casual phrasing was obviously meant to convey that the "property of the estate" definition is broad; "anything of value' is not the language adopted in the statute. Notably, the person in the legislative history who used that phrase did not hold a position that would lend persuasiveness to his remark. The "anything of value" quote came not from a Senator, Representative, or drafter of the bill that became the Bankruptcy Code. Rather, it was contained in a Statement of a staff attorney who qualified his remarks to explain that they "represent[ed] only the views of a member of the Federal Trade Commission staff," and "should [not] … be considered as, representative of an official Commission policy." H.R. Rep. 95-595, 166, 1978 U.S.C.C.A.N. 5963, 6127.

The Bejars assert that "defensive appellate rights … have value" [BRB, p. 20], as though "having value" were itself determinative. But while property is generally expected to be an asset with a positive value, not all things of value are property. A person's rights – many of which are "created by" and protected in statutes [*e.g.,* Cal Elec. Code § 10000] – have value, but that does not make them property.

Furthermore, the "right to appeal," *per se,* is actually of *no* value to the Bejars. As discussed in Part V.C. *infra*, it is only with sleight of hand that the Bejars (and the *Mozer* cases) equate the right to appeal with the power to block one.

**B. The Response Ignores the Many Reasons Why "Property" as Defined in California Law Does Not Include Statutory Procedural Rights**

Property rights are generally to be determined by reference to state law. *Butner v. United States*, 440 U.S. 48, 52 (1979). The Bejars give only lip service to this principle, however. BRB, p. 21.

To support treating Lopez's appeal as "property of the estate," the Bejars latched onto the *Mozer* case, 302 B.R. at 895-896, discussed at length in Appellants' Opening Brief. AOB, pp. 56-70. Briefly, the debtor's litigation creditor argued that a debtor's "defensive appellate rights" qualify as "property" in California based on (a) the contention that Cal. Civ. Code § 655, which contains a phrase about "rights created or granted by statute," defines "property" [though in fact it does not], and (b) the right to appeal is statutory. The court accepted their legal theory. 302 B.R. at 896.

The Response disregards most of the reasons discussed in the Opening Brief for why *Mozer's* analysis was misguided, and why §655's phrase about "rights created or granted by statute" cannot be viewed as defining "property" in California. In particular, it cannot be viewed as converting all statutory procedural rights into "property." *See* AOB, 65-69. The Bejars simply declare that "California law …

defines property as: ..." followed by an incomplete quotation of §655, omitting its critical first five words, which are: "There *may* be ownership of ...." Cal. Civ. Code, §655 (emphasis added). *See* BRB, p. 21. Those five words, in context, reflect that items that fit into the listed categories are *not excluded* from *potentially* being owned. *See* AOB, p. 68.

The Bejars say nothing about other provisions in the California Civil Code (and other Codes) that do define "property," or about the known categories of "property" that are *not included* in §655. AOB, p. 68. For example, § 655's categories do not include real property or wild animals, but both are or can be property under other provisions of the Civil Code. See Cal. Civ. Code §§656, 658. Choses in action are not on §655's list, but it has been held that "[a] chose in action is property under California Civil Code, 14(3)." *Bensinger v. Davidson*, 147 F. Supp. 240, 245 (S.D. Cal. 1956). There is ample case law in California addressing what qualifies as "property" without any reference to §655. *See, e.g.*, *People v. Kozlowski*, 96 Cal. App. 4th 853, 866 (2002); *Fields v. Michael*, 91 Cal. App. 2d 443, 449 (1949); *Bogan v. Wiley*, 90 Cal. App. 2d 288, 293 (1949).

Importantly, the Bejars do not identify *any* case law applying California law, at any time in the 130-year period between 1872 (when §655 was enacted into law), and 2003 (when *Mozer* was decided), in which a court applied §655's phrase "rights

27

created or granted by statute" to *any* statutory procedural right, and deemed it be "property" on that basis.

The Bejars assert that under California law, "appellate rights are granted by statute, *and thus fall squarely within what California defines as 'property*.'" BRB, p. 21 (emphasis added). The Bejars cite *Cobb v. University of So. Cal.,* 32 Cal. App. 4th 798, 801-802 (Ct. App. 1995) in support of that assertion, but it only supports for the first part. *Cobb* says nothing about California's definition of "property." Indeed, the word "property" appears nowhere in the opinion.

As Appellants have noted, there is an odd aspect to the way *Mozer* has been applied by the small handful of judges that have adopted it. *See* AOB, pp, 65-66. In theory, those cases hold that, pursuant to §655, *all* "rights created or granted by statute" constitute "property" in California. Yet the courts that have followed *Mozer* have only applied the "rights created or granted by statute" language to "defensive appellate rights" and the right to appeal.[14] There are a great many other state and federal statutory rights available to Californians,[15] including procedural rights like the right to appeal. But §655 has not been applied so as to declare them to be "property." *See* AOB, pp, 65-66.

The Bejars ignore the question entirely. Plainly, there is no basis for

---

[14] As noted *supra*, no case law at all applied § 655 in this manner before *Mozer*.

[15] Section 655's language about "rights created by statute" is not limited to state statutes.

contending that the phrase "rights created by statute" was intended *exclusively* to apply to the right to appeal. Yet that *is* how the *Mozer* ruling has been applied.

Appellants supplied some examples of other state statutory rights that Lopez in fact exercised after stay relief was granted – such as (a) a statutory right to present a defense at a civil trial, and (b) a statutory right to file a motion for new trial. AOB, p. 66. The Bejars indicate that they had no issue with Lopez's having exercised *those* statutory rights. See BRB, p. 26, 28. Yet the rationale for distinguishing between trial and appeal seems to be nothing more than the fact that the Bejars succeeded in gaining a large judgment that they do not want challenged.

If all "rights created by statute" are property under California law, pursuant to a statute (§655) that was adopted in 1872, one would expect it to have been applied to enable a trustee to sell a wide range of statutory rights besides the right to appeal. The Opening Brief gave one example. Another would be the statutory right of persons over 18 years of age to vote in local elections, under Cal Elec. Code §§ 2000(b) & 10000. If one assumes that, despite § 655's language and *Mozer'*s legal theory, such rights could *not* be sold, then, again, there should be no valid justification for treating a basic right of participation in the justice system as being subject to collusive sales between a trustee and a litigation opponent of the debtor.

### C. The Bejars' Reliance on the Small Set of Non-Precedential Opinions That Applied *Mozer's* Faulty Ruling, in Inapposite Cases, Is Misplaced

In *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1147 (9th Cir. 2013) (applying *Butner*), this Court of Appeals held that "a court may not fashion a rule 'solely of its own creation' in determining what constitutes a 'claim' for [bankruptcy] purposes." Likewise, a court should not fashion a rule of its own creation as to what constitutes "property" for bankruptcy purposes.

Yet that is exactly what the *Mozer* court did when it held Ms. Mozer's "defensive appellate rights" were property of the estate. A search of Westlaw establishes *Mozer* was the *first* case, in any federal jurisdiction, to use the phrase "defensive appellate rights." The search further shows there are no California state cases using the phrase "defensive appellate rights." The amorphous concept of "defensive appellate rights" appears to encompass both the statutory right to appeal and all the defenses a defendant-appellant can continue to assert when pursuing their appeal, regardless whether sourced in a statute, common law, equity or something else.

The Bejars' defense of the bankruptcy court's denial of Lopez's and Victoria's Appeal Rights Motion depends upon (1) the *Mozer* court's decision being upheld as valid, and (2) minimizing or obscuring the material factual differences between *Mozer* and the instant case. Yet the Bejars' Response offers no more than a superficial effort to defend *Mozer's* reasoning. The Bejars' thin, tautological

30

argument both *assumes* and *concludes* that the right to appeal is property:

> "§ 541(a)'s broad encapsulation of all property rights brings into the bankruptcy estate *all* of a Debtor's property interests under state law, thus said right to appeal is property of the bankruptcy estate." BRB, p. 24.

In lieu of valid reasoning, the Bejars emphasize a line of cases that has developed within this Circuit, in which courts have simply assumed the soundness of the *Mozer* court's "analysis" of state law, and thus have undertaken no effort to scrutinize the underlying state law. BRB, pp. 22-24.[16]

Importantly, *none* of these inadequately reasoned cases on which the Bejars rely is precedential. None of the cases above the district court level were marked for publication. The instant case provides the Court of Appeals an opportunity to examine the issue and the applicable law properly, and correct the errant direction taken by this line of cases.

Better reasoned opinions on this issue are found in other jurisdictions. *See, e.g.*, *Butwinick v. Hepner*, 128 Nev. 718, 723 (2012) (Supreme Court of Nevada held

---

[16] The appellate level cases that have applied *Mozer*, all marked as not to be published, are: *McCarthy v. Goldman (In re McCarthy)*, 2008 WL 8448338 at *7 (B.A.P. 9th Cir. Feb. 19, 2008) (marked "Not For Publication"); *Fridman v. Anderson (In re Fridman)*, 2016 WL 3961303 at *7 (B.A.P. 9th Cir. July 15, 2016) (marked "Not For Publication"); *Haworth v. Ness Adams, Inc.*, 2017 WL 432811 at *4 (Ct. App.. (Feb. 1, 2017) (marked unpublished/non-citable; *Bouzaglou v. Haworth (In re Bouzaglou)*, 2018 WL 4062299 (B.A.P. 9th Cir. Aug. 13, 2018) (marked "Not For Publication"), *aff'd*, 803 F. App'x. 147 (9th Cir. May 1, 2020) (unpublished); and *In re Delannoy*, 2018 WL 4190874, at *6 (B.A.P. 9th Cir. Aug. 31, 2018) (marked "Not For Publication").

that Nevada's judgment execution statutes "do not contemplate executing on defensive appellate rights as property"); *In re Morales,* 403 B.R. 629, 632–33 (Bankr. N.D. Iowa 2009) (determining that a debtor's defensive appellate rights arising from a judgment against the debtor did not constitute an asset that could be purchased by the creditor, so that the creditor could dismiss the appeal).

Although the *Butwinick* court was applying Nevada law, its analysis is instructive. There, the respondents [*i.e.,* the plaintiffs in the lower court] moved to substitute themselves as the real parties in interest and dismiss the appellants' [*i.e.*, the defendants'] appeal. 128 Nev. at 719. The respondents had acquired the appellants' rights and interests in the underlying action at a judgment execution sale. *The respondents were seeking "to foreclose appellants' defenses to respondents' own claims*, which were successfully litigated in the district court, and the decision on those claims timely appealed." 128 Nev. at 719. The court observed that, under Nevada law, the appellants' *defenses* to the respondents' underlying lawsuit did not constitute a "thing in action," subject to execution; and that a litigant's defenses are not assignable.[17] *Id*. at 721-722. It explained: By their motion, respondents, while purporting to *execute* on the defenses, were "seek[ing] to *preclude* appellants' defenses to respondents' own claims." *Id*. at 722. Accordingly, it denied the motion,

---

[17] The Bankruptcy Code does not make defenses assignable, nor does it transfer them to the debtor's trustee; rather, under 11 U.S.C. § 558, it enables a trustee to also exercise the debtor's defenses.

32

finding that "permitting a judgment creditor to execute on a judgment in such a way would cut off a debtor's defenses in a manner inconsistent with due process principles." *Id*. at 719.

Thus, the *Butwinick* court recognized that what the creditor was seeking to accomplish was not the *exercise* of the right but rather the *quashing* of it. *Cf*. AOB, p. 66, citing *In re Suarez*, 625 B.R. 508, 515-16 (Bankr. D.N.M. 2020). The Bejars, and the *Mozer* line of cases generally, fail to acknowledge that the trustees in these cases are not actually claiming for themselves a right to appeal; they are claiming the power to *block* an appeal. No California statute accords them that power.

Even among courts that assumed *Mozer* to be valid, some have recognized that allowing a sale of the debtor's defensive appeal rights to the party opposing the debtor could be impermissible. *See, e.g., Delannoy*, 2018 WL 4190874, at *8, n.8; *McCarthy*, 2008 WL 8448338 at *5 ("troubled" by the notion of selling the debtor's appeal rights, bankruptcy court refused to approve their proposed sale.)

### D. This Case Does Not Present a Constitutional Issue, Because as a Statutory Matter, the Right to Appeal Is Not "Property"

The Bejars point out that courts have held there is no constitutional due process right to appeal from a judgment. BRB, pp. 16, 21, 26. That is correct, as far as it goes, but it overlooks how this case *could* present a constitutional issue.

"Although the Federal Constitution guarantees no right to appellate review, ... once a State affords that right, ... the State may not 'bolt the door to equal

justice.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 110 (1996) (*quoting Griffin v. Illinois,* 351 U.S. 12, 24 (1956) (Frankfurter, J., concurring in judgment)). "When an appeal is afforded, … it cannot be granted to some litigants and capriciously or arbitrarily denied to others without violating the Equal Protection Clause." *Lindsey v. Normet*, 405 U.S. 56, 77 (1972).

"[T]he [Supreme] Court's decisions concerning access to judicial processes, … reflect both equal protection and due process concerns." *M.L.B. v. S.L.J.*, 519 U.S. at 120. Nevertheless, '[m]ost decisions in this area', we have recognized, 'res[t] on an equal protection framework.'" *Id*.

Here, there is no question whether appeals should be afforded. They *are* afforded. California Code of Civil Procedure §902 provides that all "parties aggrieved" by a judgment have the right to appeal. In the Bejar Action, Lopez is the only party of record aggrieved by the judgment. Therefore, she was entitled to appeal, which she did on behalf of herself and Victoria, the party that the Appellees will look to for any recovery.

As discussed in the Opening Brief, where a litigation creditor has obtained stay relief to continue their action against a debtor through final judgment in order to recover insurance, or where, after filing a bankruptcy petition, a debtor resumes an action against a nondebtor defendant, courts recognize that in the resumed action, both sides will resume their respective roles; the resumed activity is not limited to

one side, while the other sits by with its hands figuratively tied. *See* AOB, pp. 44-48.[18] Thus, following entry of the Stay Relief Order here, the Bejar Action was to resume as it had been prepetition.

There is no rule of California law that provides: "If a personal injury plaintiff takes an insured-defendant-debtor to trial after obtaining stay relief, in order to obtain a judgment so the plaintiff can recover from the debtor's insurer, and if the plaintiff prevails at trial, then the insured-defendant-debtor may not appeal; if, however, the plaintiff does not prevail, the plaintiff may appeal." Such a one-sided rule would be arbitrary and capricious, and contrary to the Equal Protection clause. If the lower courts' rulings were affirmed, the treatment of Lopez and Victoria could be described in just this way.

Rules of jurisprudence caution against reaching constitutional issues unnecessarily. *Tory v. Cochran*, 544 U.S. 734, 740 (2005). Here, because the right to appeal is not "property" under California law, there is no need to reach the constitutional equal protection issue.

---

[18] *See also, e.g., In re Crowe*, 2021 WL 415864, at *3 (Bankr. D. Ariz. Feb. 4, 2021) (where a debtor-plaintiff continues to prosecute pre-bankruptcy litigation, "[o]ut of fairness, the defendant should be allowed to defend himself from attack, and [t]he automatic stay should not tie the hands of a defendant while the plaintiff debtor is given free rein to litigate.").

### E. The Bejars' Contention that the Bankruptcy Court Gave Due Regard to the Insurance Contract Is Meritless

The Bejars barely respond to Appellants' contention that the bankruptcy court's 12-20-22 Decision failed to hold the Trustee to account for his obligations as owner/policyholder of the insurance contract with Victoria. BRB, p. 33. In doing so, they disregard the terms of the policy and the case law interpreting those terms. Instead, they shift the "conversation" and argue that Victoria did not ask the Trustee to approve the filing of the appeal. *Id.* For reasons already discussed, Appellants had no such obligation. The Stay Relief Order removed the action from bankruptcy court oversight and no property of the estate was at risk.

### VI. THE BEJARS MISSTATE AND MISAPPLY THE STANDARDS FOR TREATING A PROPERTY INTEREST AS HAVING ARISEN PREPETITION

In general, for anything to be "property of the estate," it must be "property," and it must be property of the debtor on the Petition Date. Responding to Appellants' position that Lopez's right to appeal arose post-petition, the Bejars offer a thin analysis, much like how the bankruptcy court viewed it,[19] in which they: (a)

---

[19] *See* 1-ER-27. The bankruptcy court disregarded the question of when the right to appeal actually accrued, as a supposed asset of the estate, concluding that, because the *Bejars'* cause of action against Lopez had accrued prepetition [indeed, years before it], *Lopez's* "right to defend against" a *potential* adverse judgment through an appeal also "accrued" prepetition. Such speculation regarding potential and contingent rights and interests approaches the absurd – especially since a debtor must list all their assets on their schedules, or risk their being deemed waived. *See In re*

overstate the significance of the "sufficiently rooted" language [*see infra*], while failing to consider when the right to appeal accrued; and (b) create out of whole cloth a new variation on the "right to appeal" – a "*contingent* right to appeal" – so that they can relate the right to appeal to a prepetition time period.

Like the bankruptcy court did, the Bejars fail to address the principal question of when the alleged property right *accrued*. *See In re Glaser*, 816 F. App'x 103, 104 (9th Cir. 2020); *Cusano v. Klein*, 264 F.3d 936, 945–47 (9th Cir. 2001). "To determine when a cause of action accrues, we look to state law." *Cusano v. Klein*, 264 F.3d at 947; *see also Glaser*, 816 F. App'x at 104 (same); *In re Bolton*, 584 B.R. 44, 53 (Bankr. D. Idaho 2018). Similarly, state law is the source for when the right to appeal accrues.

They also overlook (as the bankruptcy court did), that "[t]he party seeking to include property in the estate bears the burden of showing that the item is [estate] property." *In re Neidorf*, 534 B.R. 369, 372 (B.A.P. 9th Cir. 2015).

By filing her notices of appeal, Lopez exercised her right to appeal under Cal.CCP. §902. In this context, the Bejars refer to her right as a "contingent right" to appeal. BRB, p. 25. Plainly, this is done to back-date the right to a period before the bankruptcy filing. However, in a search on Westlaw, Appellants have not located

---

*WVSV Holdings, LLC*, 2023 WL 5548975, at *2 (9th Cir. Aug. 29, 2023) (any "contingent interest" should be disclosed on the debtor's schedules).

any "contingent right to appeal" under California law, and Appellees have produced none, though the burden is on them if they seek to   establish that a "contingent right to appeal" exists under California law.

If such a contingent right existed, one would expect to routinely see in debtors' schedules of *assets* a listing of the pending lawsuits *against* the debtors – because if a plaintiff were granted stay relief, and it led to a money judgment, the debtor might appeal.  Appellants have not been shown any such schedules.

Instead of manufacturing a "contingent right of appeal," the Bejars, and the courts below, should have looked to California Rule of Court 8.104(d) for when the right to appeal accrues under California law.  It provides that a notice of appeal may not, under any circumstance, be treated as valid if filed before "the superior court has announced its intended ruling."  Cal. R. Ct.  8.104(d)(2).  In this case, the announcement of the judgment, as well as the entire trial, occurred post-petition, so the right to appeal accrued post-petition.

In their Response, the Bejars overstate the intended role and scope of the "sufficiently rooted" language, which this Court used in *In re Ryerson*, 739 F.2d 1423, 1426 (9th Cir. 1984), in determining when a property interest arose.[20]

---

[20]  In *Ryerson*, this Court adhered to the "sufficiently rooted" language from *Segal v. Rochelle*, 382 U.S. 375 (1966), while dropping a different part of its pre-Code test.

*Ryerson* lacked the benefit of other courts' analysis of the effect of the enactment of the Bankruptcy Code on the *Segal* ruling.  Courts that have rejected using "sufficiently rooted" as part of the test for whether a particular right of action arose

This Circuit's decision in *Glaser* exemplifies the limited role that "sufficiently rooted" plays in the analysis. The issue there was whether a malpractice cause of action was property of the estate. The debtor claimed theire bankruptcy counsel's alleged error was in filing their bankruptcy case too early, causing the debtor to incur certain tax liabilities that would have been avoided by a later filing. 816 F. App'x at 105. Despite the clear pre-bankruptcy connection, this Court held the cause of action accrued *post-petition*, and thus was not property of the estate. This was because "the 'existence of damages' was not certain until the IRS asserted its claim against Debtors—which occurred post-petition." *Glaser*, 816 F. App'x. at 105. Following that approach, the lower courts should have recognized there was no certainty of a judgment for the Bejars until the judgment against Lopez was announced.

## VII. APPELLEES DO NOT DISPUTE THAT THE DISTRICT COURT'S FACT "FINDINGS" WERE IMPROPER AND SHOULD BE VACATED

Argument "V" in the Opening Brief asserted that the District Court's Decision exceeded the scope of the bankruptcy court's findings, made findings that were unsupported in the record, and went beyond the scope of the issues presented. The Bejars did not respond. Argument "V" is unopposed.

---

prepetition include *In re Burgess*, 438 F.3d 493, 498–99 (5th Cir. 2006) (cited at AOB., p. 71): *In re Bracewell*, 454 F.3d 1234 (11th Cir. 2006); *In re Lloyd*, 603 B.R. 247, 252 (Bankr. D. Mass. 2019); and cases cited therein.

## VIII.    CONCLUSION

For the foregoing reasons and those set forth in the Opening Brief, Victoria and Lopez respectfully request this Court to:

1. Reverse the District Court's June 30, 2023 Decision, and vacate its findings;

2. Reverse the Bankruptcy Court's 2-6-23 Decision and related Order, and vacate its findings, as an abuse of discretion;

3.  Reverse the Bankruptcy Court's 12-20-22 Decision and related Order, and vacate its findings, and direct that the Appeal Rights Motion be granted with a finding that Lopez's right to appeal was not property of the estate, and that the Bankruptcy Code does not impair Appellants' rights to proceed with the appeal in the Bejar Action; and

4. Grant such other relief as the Court deems just and proper.

February 7, 2024          Respectfully submitted,

| | | |
|---|---|---|
| *Of counsel:* | /s/ Victor A. Vilaplana | /s/ Michael H. Colmenares |
| | Victor A. Vilaplana (SBN 58535) | Michael H. Colmenares (SBN: 123024) |
| Carl N. Kunz III | **PRACTUS, LLC** | **COLMENARES & TOMILOWITZ** |
| Douglas N. Candeub | P.O. Box 9058 | 6080 W Center Drive, 6th floor |
| **MORRIS JAMES LLP** | La Jolla, CA 92038 | Los Angeles, CA 90045 |
| 500 Delaware Ave., | Tel.: (619) 840-4130 | Tel.: (213) 444-1900 |
| Ste. 1500 | | Email: mhcandrmt@gmail.com |
| Wilmington, DE 19801 | and | |
| Tel.: (302) 888-6800 | Benjamin M. Carson (SBN 283611) | |
| | **Law Offices of Benjamin M. Carson, P.C**. | *Attorney for Appellant Josefina Lopez* |
| | 5965 Village Way, Ste. E105 | |
| | San Diego, CA 92130 | |
| | Tel: (858) 255-4529 | |

*Attorneys for Appellant Victoria Fire and Casualty Company*

41

## IX.    CERTIFICATE OF COMPLIANCE

**9th Cir. Case Number 23-55673\***

**\*Case Numbers 23-55674, 23-55680 and 23-55682 were consolidated with Case Number 23-55673, by court order dated September 19, 2023.**

I am one of the attorneys representing co-appellant Victoria Fire & Casualty Company.

**This opening brief contains  9.973  words,** excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief:

[X] complies with this Court's Order dated September 19, ,2023, (Dkt. 12 in Appeal no. 23-55673)  which consolidated these cases and provided the Appellants with a limit of 10,000 words for their consolidated  reply brief..

**Signature** /s/ Benjamin M. Carson                    **Date:**  February 7, 2024
*Attorney for Victoria Fire and*
*Casualty Company*

a

# SUPPLEMENTARY ADDENDUM

# SUPPLEMENTARY ADDENDUM

# TABLE OF CONTENTS

11 U.S.C. § 323 ...................................................................................... A1

11 U.S.C. § 523 ...................................................................................... A1

11 U.S.C. § 554 ...................................................................................... A1

Cal. Civil Code § 656 ............................................................................. A1

Cal. Civil Code § 657 ............................................................................. A1

Cal. Civil Code § 658 ............................................................................. A2

Cal. Educ. Code § 48907 ....................................................................... A2

Cal. Elec. Code § 2000(b) ...................................................................... A3

Cal. Elec. Code § 10000 ........................................................................ A3

Cal. Ins. Code § 11580(b)(2) ................................................................. A3

**11 U.S.C. § 323 – Role and Capacity of Trustee**

    (a) The trustee in a case under this title is the representative of the estate.

    (b) The trustee in a case under this title has capacity to sue and be sued.

**11 U.S.C. § 554 – Abandonment of Property of the Estate**

(a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(c) Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

(d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

***

**Cal. Civil Code § 656 – Animals Wild by Nature**

Animals wild by nature are the subjects of ownership, while living, only when on the land of the person claiming them, or when tamed, or taken and held in possession, or disabled and immediately pursued.

**Cal. Civil Code § 657 – Property is Real or Personal**

Property is either: 1) real or immovable; or 2) personal or movable.

**Cal. Civil Code § 658 – Real or Immovable Property**

Real or immovable property consists of: 1) land; 2) that which is affixed to land; 3) that which is incidental or appurtenant to land; 4) that which is immovable by law; except that for the purposes of sale, emblements, industrial growing crops and things attaches to or forming part of the land, which are agreed to be severed before sale or under the contract of sale, shall be treated as goods and be governed by the provisions of the title of this code regulating the sales of goods.

**Cal. Educ. Code § 48907 – Freedom of Speech and Press**

(a) Pupils of the public schools, including charter schools, shall have the right to exercise freedom of speech and of the press including, but not limited to, the use of bulletin boards, the distribution of printed materials or petitions, the wearing of buttons, badges, and other insignia, and the right of expression in official publications, whether or not the publications or other means of expression are supported financially by the school or by use of school facilities, except that expression shall be prohibited which is obscene, libelous, or slanderous. Also prohibited shall be material that so incites pupils as to create a clear and present danger of the commission of unlawful acts on school premises or the violation of lawful school regulations, or the substantial disruption of the orderly operation of the school.

(b) The governing board or body of each school district or charter school and each county board of education shall adopt rules and regulations in the form of a written publications code, which shall include reasonable provisions for the time, place, and manner of conducting such activities within its respective jurisdiction.

(c) Pupil editors of official school publications shall be responsible for assigning and editing the news, editorial, and feature content of their publications subject to the limitations of this section. However, it shall be the responsibility of a journalism adviser or advisers of pupil publications within each school to supervise the production of the pupil staff, to maintain professional standards of English and journalism, and to maintain the provisions of this section.

A- 3 -

(d) There shall be no prior restraint of material prepared for official school publications except insofar as it violates this section. School officials shall have the burden of showing justification without undue delay prior to a limitation of pupil expression under this section.

(e) "Official school publications" refers to material produced by pupils in the journalism, newspaper, yearbook, or writing classes and distributed to the student body either free or for a fee.

(f) This section does not prohibit or prevent the governing board or body of a school district or charter school from adopting otherwise valid rules and regulations relating to oral communication by pupils upon the premises of each school.

(g) An employee shall not be dismissed, suspended, disciplined, reassigned, transferred, or otherwise retaliated against solely for acting to protect a pupil engaged in the conduct authorized under this section, or refusing to infringe upon conduct that is protected by this section, the First Amendment to the United States Constitution, or Section 2 of Article I of the California Constitution.

**Cal. Elec. Code § 2000(b) – Qualifications to Vote; Eligibility to Register and Vote**

*** 

(b) Any person who will be at least 18 years of age at the time of the next election is eligible to register and vote at that election.

*** 

**Cal. Elec. Code § 10000 – Entitlement to Vote**

Every person is entitled to vote at a local, special, or consolidated election who is registered in any one of the precincts which compose the local, special, or consolidated election precincts, in accordance with this code.

**Cal. Ins. Code § 11580(b)(2) – Provisions Required in Policy Insuring Against Losses**

A- 4 -

A policy insuring against losses set forth in subdivision (a) shall not be issued or delivered to any person in this state unless it contains the provisions set forth in subdivision (b). Such policy, whether or not actually containing such provisions, shall be construed as if such provisions were embodied therein.

*** 

  (b) Such policy shall not be thus issued or delivered to any person in this state unless it contains all the following provisions:

(1) ***

(2) A provision that whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment.